**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANUEL RAMIREZ,

                    Plaintiff,

        -against-

VERIZON COMMUNICATIONS, INC.,
EASTERN ACCOUNT SYSTEM OF
CONNECTICUT, INC., EXPERIAN
INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, INC.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

13 Civ. 6000 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Manuel Ramirez brings this action, alleging that Defendant Eastern Account System of Connecticut, Inc.[1] ("Eastern"): (i) violated Section 1681s-2(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA"), by failing to conduct a reasonable investigation of Plaintiff's disputes concerning his credit report, and (ii) violated Sections 1692e(2)(A) and (10) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by sending a bill to collect a debt that was not owed and by falsely reporting to credit reporting agencies that Plaintiff owed this debt. (Compl. ¶¶ 41-42, 54-56, ECF No. 1.) Plaintiff seeks actual, statutory, and punitive damages; economic and emotional distress damages; and attorney's fees for these alleged violations. (*Id.* ¶¶ 43, 57-58.)

---

[1] Defendants Equifax Information Services LLC (incorrectly sued in this action as "Equifax Information Services, Inc.") and Experian Information Solutions, Inc. were dismissed from this action pursuant to stipulations of dismissal filed by the parties. (*See* ECF Nos. 23, 45.) This Court dismissed a separate claim against Defendant Verizon Communications from this action following Plaintiff's representation during oral argument that the parties had settled. (*See* Oct. 23, 2014 Oral Argument Tr. ("Tr.") 2:2-16; Order, ECF No. 59.)

Eastern moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of all claims against it. (Mot., ECF No. 42.) Eastern argues that: (i) Plaintiff has not shown that he suffered any damages under the FCRA;[2] and (ii) Plaintiff failed to utilize the dispute procedures specified in 15 U.S.C. § 1692g before filing suit, and Plaintiff's FDCPA claim was brought outside of the one-year statute of limitations period specified in 15 U.S.C. § 1692k(d). (*See* Mem., ECF No. 44.) The proffered evidence raises no genuine issue of material fact that would permit a reasonable jury to find that Eastern has violated the FCRA or FDCPA. Defendant's motion for summary judgment is GRANTED.

## Factual Background

In December 2011,[3] Plaintiff began a residential cable service package with Comcast, which he claims included a thirty-day money back guarantee and $100 refundable equipment deposit, which he saw on television.[4] (*See* Pl.'s Resp. to Def.'s Local Rule 56.1 Statement ("PR"), ¶¶ 1, 3, ECF No. 48.) Because Ramirez canceled this service within thirty-days, he sought to recover the full amount of his $100 deposit, but instead received a check (which he did not cash or return) from Comcast in the amount of $61.10. (*See* Compl. ¶¶ 23-24; Oct. 23, 2014 Oral Argument Tr. ("Tr.") 25:20-26:4.) Plaintiff "successfully challenged the $100 initial charge with his credit card company," and thus was not charged any amount. (Compl. ¶ 24; PR ¶ 7.)

Thereafter, Eastern sent Ramirez letters on or about May 14, 2012; July 16, 2012; and August 15, 2012 concerning the $100 debt that Plaintiff allegedly owed to Comcast. (Declaration

---

[2] Eastern conceded during oral argument that it would not argue in support of its motion "the reasonableness of the investigation" conducted concerning the disputed balance. (Tr. 12:23-25.)

[3] Plaintiff testified at his deposition that the Comcast service was "ordered and closed . . . in December 2011 and the equipment was returned in January 2012, the following month." (Declaration of Kevin Mallon ("Mallon Decl."), Ex. C at 99:21-100:8, ECF No. 50.)

[4] Neither evidence of this television advertisement nor a contract reflecting a thirty-day trial and money back guarantee has been presented in the record. (*See* Tr. 22:9-23:22; *see also* Mallon Decl., Ex. C at 127:10-18 (Plaintiff's deposition testimony was that "[he has] no documentation" of the thirty-day money back guarantee).)

of Steven Zank ("Zank Decl.") ¶¶ 6-7, 12, 15 & Exs. A & C, ECF No. 43; PR ¶ 11.)[5]  Eastern did

not communicate directly with Comcast to determine whether Plaintiff had a trial period, or whether

he closed his account within thirty days.  (*See* PR ¶ 46 (citing Declaration of Kevin Mallon

("Mallon Decl."), Ex. A at 72:12-73:16).)  The parties dispute whether Plaintiff responded to

Eastern's collection letters.  (*See* Def.'s Local Rule 56.1 Statement ("DS") ¶ 12; PR ¶ 12; *see also*

Tr. 40:5-22.)

Plaintiff alleges that Eastern reported the disputed $100 charge to two credit reporting

agencies, who continued to report this balance as an outstanding, disputed debt on Plaintiff's credit

report.  (*See* Compl. ¶¶ 28, 30.)  On May 22, 2013, Plaintiff's middle credit score was 654, and his

credit report listed a $100 disputed account with Eastern[6] as well as an unrelated $75 disputed

account with Verizon.[7]  (Declaration of Mirachelle Alvarez ("Alvarez Decl."), Ex. A at 1, 3, ECF

No. 51.)  As a result of these allegedly erroneous credit reports, Plaintiff claims he experienced

"denials of credit and/or higher interest rates," and emotional distress.  (Compl. ¶ 33.)  Plaintiff

contends that the disputed collections account with Eastern: (i) rendered him ineligible for a

conventional mortgage that would have enabled him to purchase three potential properties located

in Stony Point, New York; Nyack, New York; and North Bergen, New Jersey (*see* Opp'n at 6, ECF

No. 49; (PR ¶ 28 (citing Alvarez Decl. ¶¶ 6-11))), and (ii) resulted in the Plaintiff securing a more

expensive lease for a new Land Rover vehicle (*see* Opp'n at 7-8; PR ¶ 31 (citing Declaration of

Kevin Grant ("Grant Decl.") ¶¶ 8-15)).  After both the $100 Comcast and $75 Verizon accounts

---

[5] The August 15, 2012 collection letter is not in the record nor referenced in the Complaint.  (*See* Zank Decl. ¶ 15.)

[6] The Eastern account on Plaintiff's credit report reads: "Account information disputed by consumer; original creditor: Comcast Cable Jersey City NJ."  (Declaration of Mirachelle Alvarez ("Alvarez Decl."), Ex. A at 3 (capitalization removed), ECF No. 51.)

[7] According to Plaintiff, Verizon independently placed a $75 account for collection in relation to a similar package of services that Plaintiff cancelled, for which he was being charged.  (*See* Compl. ¶¶ 16-21.)  The Complaint does not allege that Eastern reported the $75 disputed account to credit reporting agencies, or attempted to collect the purported Verizon debt.

3

were removed from his credit report, Plaintiff's credit score rose to 726.  (Alvarez Decl. ¶ 12 (citing *id.*, Ex. B at 1).)

## Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The party moving for summary judgment has the burden of demonstrating that no genuine issue of material fact exists.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact, and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted), *cert. denied*, 534 U.S. 891 (2001).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).  Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## FCRA Claim

Summary judgment is warranted on the FCRA claim because Ramirez cannot demonstrate that he sustained any damages as a result of Eastern's activities.  Even where a defendant has violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of the disputed

4

information, "summary judgment is still appropriate if no reasonable factfinder could find that Plaintiff is entitled to damages under the FCRA." *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005).

"To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating 'actual damages sustained' as a result of the Defendant['s] activities." *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) (quoting *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995)). Here, Eastern correctly argues that Plaintiff has presented no proof of actual damages. (*See* Mem. at 11-20.)

Ramirez claims that, without the disputed account on his credit report, he would have obtained pre-approval for financing, secured a conventional "mortgage, purchased [the three] properties, rented these properties out, and made some unspecified profit on these properties." (*See* Tr. 31:16-32:1; *see also* Opp'n at 5-7.) However, he fashions an entirely speculative chain of events, as there is no evidence that Plaintiff: (i) applied for, and was denied, a specific mortgage because of the outstanding Eastern account;[8] (ii) would have been approved[9] for a mortgage that would enable him to purchase the three residences;[10] (iii) reached an agreed-upon price with any of

---

[8] Plaintiff stated during oral argument that he was never denied "[a] specific mortgage." (Tr. 27:3-6.) While Plaintiff contends that Citizens Mortgage Corporation ("Citizens") denied him pre-approval for financing, that specific fact is not contained in the Alvarez Declaration or otherwise reflected in the record. (*See id.* 46:7-23.)

[9] According to the mortgage specialist who was assisting Plaintiff, he would have been "eligible" for a mortgage with Citizens if his credit score was 660 or higher and if his credit report did not list an open disputed collections account. (Alvarez Decl. ¶¶ 9-11.) However, the specialist's declaration does not describe the likelihood of approval, nor the interest rate and dollar amount of financing Plaintiff was seeking and allegedly could have received.

[10] As of May 7, 2013, Plaintiff was pre-approved by Weichert Financial Services for a $339,500 loan "to purchase a new home with an estimated value of *$350,000.*" (DS, Ex. 13 at 3 (emphasis added).) Plaintiff does not explain how the removal of the disputed account would have enabled him to afford three residences worth approximately $1.8 million combined. (*See id.*, Ex. 15 at Ramirez 0106-0108 (showing Plaintiff made offers in June 2013 and August 2013 for the properties at issue in the following amounts: (1) $739,000 for the Stony Point property; (2) $670,000 for the Nyack property; and (3) $460,000 for the North Bergen property).)

5

the sellers to purchase the properties;[11] or (iv) had prospective rental agreements for these properties. Plaintiff's reliance on *Casella* for loss of opportunity damages is consequently misplaced because his case lacks "*specific evidence . . .* that a particular bank might have *issued* a new loan, absent plaintiff's negative credit report." 56 F.3d at 475 (emphasis added).

Plaintiff is also not entitled to emotional distress damages given the absence of concrete, objective evidence of injury. Aside from Plaintiff's testimony and a self-serving affidavit from his brother,[12] no evidence of emotional distress has been presented. *See Caltabiano*, 387 F. Supp. 2d at 142 (declining to award emotional distress damages following a plaintiff's receipt of an inaccurate credit report where the plaintiff did not "provide[] any psychiatric or medical records" to show that he suffered emotional damages, and only offered one source of testimony besides his own as supporting evidence). The conclusory allegations of Plaintiff's injury[13] further demonstrate that emotional distress damages are unwarranted in this case. *See Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 251 (S.D.N.Y. 2008) ("Plaintiffs must produce more than conclusory allegations regarding stress and frustration to recover for emotional distress under the FCRA.") (internal quotation marks omitted), *aff'd*, 360 F. App'x 255 (2d Cir. 2010).

Moreover, although Ramirez argues that he "*may* have been able to obtain" a more favorable lease for a Land Rover (*see* Opp'n at 19-20 (emphasis added)), he does not demonstrate that the Eastern account was the reason—let alone a "substantial factor," *see Gorman v. Experian Info.*

---

[11] Plaintiff admits that "[h]e never had a deal to purchase property" with the sellers, who did not accept the offers he made. (*See* Tr. 28:6-18; *see also* DS ¶ 27; PR ¶ 27 (not disputing that Plaintiff never entered into a purchase agreement with any of the sellers).)

[12] (*See* Declaration of Jose Ramirez ¶ 7, ECF No. 52 ("It was obvious to me by the way my brother was acting that the fact that this debt collector who refused to remove an erroneous Comcast debt from his report was causing him a great deal of stress and anxiety.").)

[13] (*See, e.g.*, Compl. ¶ 6 ("The plaintiff further alleges that as a direct and proximate result of the Defendants' actions, conduct, and omissions he suffered . . . emotional distress, annoyance, aggravation, and frustration.").)

*Solutions, Inc.*, No. 07 CV 1846(RPP), 2008 WL 4934047, at \*6 (S.D.N.Y. Nov. 19, 2008)—for

why he received a lower tier lease. According to the finance manager at Prestige Land Rover,

Plaintiff's credit score at the time of the transaction was 622 and he was approved for a "Tier 3"

lease. (Grant Decl. ¶¶ 9, 11.) Plaintiff's credit score prior to the placement of the Eastern account

on his credit report is not in the record. (Tr. 32:19-33:1.) Plaintiff does not establish causation with

respect to the Eastern account because his credit score rose to 726 only after *both* the Verizon and

Eastern accounts were removed from his credit report, and he needed a minimum credit score of

720 to receive the less expensive Tier 1 lease. (*See* Alvarez Decl., Ex. B at 1; Tr. 32:4-10; Grant

Decl. ¶ 14.) In addition, the presence of the Eastern account may not have impacted the transaction

at all because Plaintiff, despite his credit score, nonetheless received the benefit of a Tier 3 lease,

which is typically only offered to customers with credit scores ranging from 659 to 688. (*See id.*

¶ 12.)

Therefore, without factual support from which a reasonable jury could find that Plaintiff is

entitled to any damages, summary judgment should be granted to the Eastern on the FCRA claim.[14]

*See Trikas*, 351 F. Supp. 2d at 44.

## FDCPA Claim

Sections 1692e(2)(A) and (10) of the FDCPA proscribe "[t]he false representation of the

character, amount, or legal status of any debt" and "[t]he use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer," respectively. Debt collectors are subject to strict liability for violations of the FDCPA.

---

[14] The record also does not support an allegation of "willful" noncompliance with the FCRA (*see* Compl. ¶ 43) such that
Plaintiff would be entitled to punitive damages. *See* 15 U.S.C. § 1681n(a); *Perl v. Am. Express*, No. 12-CV-4380 (ER),
2012 WL 2711270, at \*2 (S.D.N.Y. July 9, 2012) (explaining that willfulness under Section 1681n "means knowledge
or recklessness") (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007)); *George v. Equifax Mortg. Servs.*,
No. 06-CV-971(DLI)(LB), 2010 WL 3937308, at \*2 (E.D.N.Y. Oct. 5, 2010) ("[T]he mere failure to correct a
plaintiff's inaccurate credit information, even after notification of the inaccuracy, does *not* constitute a willful failure to
comply with the FCRA.") (emphasis original).

*See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).  In the Second Circuit, "[t]o determine whether a communication violates § 1692e," an "objective standard based on the 'least sophisticated consumer'" is applied.  *Nicholson v. Forster & Garbus LLP*, 570 F. App'x 40, 41 (2d Cir. 2014) (quotation omitted); *see also Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 252 & n.12 (S.D.N.Y. 2011).  Under this test, a violation of the FDCPA is established if the communication or practice at issue "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or [] could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012).  "[T]he least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment."  *Bodur*, 829 F. Supp. 2d at 253 (quotation omitted).

According to Plaintiff, his FDCPA claim is premised on Eastern's "continued placement of the disputed debt on [his] credit report."  (Opp'n at 22-23.)  In this case, on November 6, 2012, a credit report provider notified Eastern that Plaintiff had submitted a dispute concerning the Comcast account charge.  From this date onward, Defendant Eastern reported that this account was disputed. (DS ¶¶ 14-20; *accord* PS ¶¶ 14-20).  Applying the least sophisticated consumer test to these facts, it is plain that no misrepresentation of "the nature and legal status of the underlying debt" occurred, as Eastern unambigiously indicated that the $100 was "disputed by [the] consumer" and listed the original creditor (Comcast) associated with the account.[15]  *See Gabrielle*, 503 F. App'x at 94; (Alvarez Decl., Ex. A at 3).  Eastern also did not prevent Plaintiff from disputing this account; instead, the May 14, 2012 and July 16, 2012 collection notices afforded Plaintiff two separate

---

[15] It would have been a *violation* of the FDCPA had Eastern communicated credit information which it knew or should have known to be false, "including the failure to communicate that a disputed debt is disputed."  *See* 15 U.S.C. § 1692e(8).

opportunities to dispute this debt in writing,[16] to which Plaintiff apparently did not respond.[17] Indeed, no "false representation" under Sections 1692e(2)(A) and (10) could be made where Plaintiff "does not dispute" that "every report on the account made by Eastern *accurately* indicated that the trade line relating to the Comcast account was the subject of a customer dispute." (*See* DS ¶ 20 (emphasis added); *accord* PR ¶ 20.)

Because Plaintiff has presented no evidence that Eastern's reporting of the debt was misleading or deceptive, nor that this practice would have prevented the least sophisticated consumer from disputing or responding to collection, summary judgment is warranted on the FDCPA claim. *See Gabriele*, 503 F. App'x at 94.[18]

---

[16] As stated in the May 14, 2012 collection letter, unless Plaintiff otherwise disputed the outstanding debt within "30 days after receiving th[e] notice," Eastern would "assume th[e] debt [wa]s valid." (Zank Decl., Ex. A.) The July 16, 2012 collection letter also invited Plaintiff, "[i]f [he] dispute[d] the debt, [to] state the nature of the dispute on the reverse side of th[e] letter and return it to [Eastern] in the enclosed envelope." (*Id.*, Ex. C.)

[17] Although Plaintiff stated during oral argument that he called Eastern "immediately after getting the bills, and called them to see what the problem was," he offered no citation to record evidence to substantiate this claim. (*See* Tr. 40:14-17; *see also* Mallon Decl., Ex. C at 143:12-145:13 (Plaintiff's deposition testimony that he "d[id]n't know specific dates" of the alleged telephone calls with Eastern).) Plaintiff also confirmed that there is "no written evidence" that he responded to Eastern's collection letters, and his responses to interrogatories and requests for production reflect the same. (*See* Tr. 40:1-12; DS, Ex. 8 at 4 ("[P]laintiff did not send any written correspondence directly to Eastern"); *id.*, Ex. 9 at 3 ("[P]laintiff does not possess" any "telephone records evidencing any telephone call or conversation between [P]laintiff and Eastern").)

[18] To the extent that Plaintiff seeks relief for the May 14, 2012 and July 16, 2012 collection letters sent by Eastern (*see* Compl. ¶ 54), that claim is time-barred under the one-year statute of limitations stated in 15 U.S.C. § 1692k(d), as Plaintiff filed suit on August 26, 2013.

## Conclusion

Defendant's motion for summary judgment is GRANTED.  The Clerk of Court is directed to close the motion at ECF No. 42, and this case.

Dated: February 27, 2015
       New York, New York

SO ORDERED

GEORGE B. DANIELS
United States District Judge